Bobby TEMPLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 259–83.

Court of Criminal Appeals of Texas,
En Banc.

April 23, 1986.

Charles Scarborough, Abilene, for appellant.

Russell L. Carroll, Dist. Atty., Sweetwater, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

The Eastland Court of Appeals affirmed appellant's conviction for murdering his wife by electrocution. *Templin v. State*, 677 S.W.2d 541 (Tex.App.—Eastland, 1983). Punishment was assessed at ninety-nine years.

We granted appellant's petition for discretionary review to consider two issues: first, did the Court of Appeals apply the correct standard in reviewing the sufficiency of the circumstantial evidence in this case and secondly, did the Court of Appeals err when it deemed that remote statements made by appellant when he was a child were properly admitted into evidence.

The Court of Appeals in reviewing the case looked at the evidence in the light most favorable to the State. Appellant contends this was the improper standard and the court should have viewed the evidence in light of the presumption that the appellant was innocent. We addressed this same issue in *Houston v. State*, 663 S.W.2d 455 (Tex.Cr.App.1984), where we stated:

"... [Recently] we handed down a group of cases which settled the question of the standard of review to be used in circumstantial evidence cases. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983) (opinion on motion for rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on motion for rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.App.1983) (opinion on motion for rehearing); and *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on motion for rehearing). The Court found that the standard for review in both direct and circumstantial evidence cases is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... In both direct and circumstantial evidence cases the reviewing court will look at the evidence *in the light most favorable to the verdict.*" *Houston v. State*, 663 S.W.2d at 456. (emphasis added).

Based on the foregoing, it is clear that the Court of Appeals used the proper standard in reviewing the sufficiency of the evidence. We have reviewed the record and find that the opinion of the Court of Appeals properly sets out the evidence which supports the jury's verdict. Applying the standard set out above, we also find the evidence sufficient. This ground of review is without merit.

During the presentation of the State's case-in-chief, two of appellant's second cousins testified that, when appellant was ten or twelve years old, appellant told them that he electrocuted dogs and cats. Appellant told his cousins that he would peel back the wires on an extension cord, wrap the cord around the animals' legs and then plug in the extension cord. Defense coun-

sel objected on the grounds that the statements were remote and had no probative value as to identity, knowledge, intent, malice or any other issue in the case. It was established outside the presence of the jury that these statements were made by appellant some ten to fifteen years before the trial of this cause. (At the time of trial, appellant was approximately twenty-seven years old.)

During the punishment phase of the trial, Clifford Farmer, appellant's uncle, testified over defense counsel's objection that in late 1969 or early 1970, while the fourteen or fifteen year old appellant was helping the witness move irrigation pipe, the witness warned appellant to be sure the pipe did not contact any electrical wire. The appellant replied that he knew what the result would be because he used to electrocute cats.

On original appeal, appellant argued that these conversations were too remote to be admissible. The Court of Appeals held that since the cases on remoteness cited by appellant dealt with prior convictions used for impeachment, they were not in point and thus overruled appellant's ground of error. Appellant now argues that this is a case of first impression and urges this Court to establish a remoteness test for such statements. The State maintains that since the appellant's admissions to his relatives were admitted for the purpose of showing knowledge, intent and identity, remoteness should play no part in determining their admissibility.

For reasons which we will discuss in this opinion, we decline appellant's invitation to construct a per se rule concerning remote transactions. We must agree, however, that the prejudicial effect of the evidence in question outweighs whatever probative value it may have. *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). See also McCormick and Ray, Texas Law of Evidence, Sections 3 and 1521 (1980).

It is a well established and fundamental principle in our system of justice that an accused person must be tried only for the offense charged and not for being a criminal (or a bad person) generally. *Williams v. State*, supra; *Albrecht v. State*, supra; *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr. App.1980). It is for this reason that Anglo-American jurisprudence has always shown a marked reluctance to admit evidence of extraneous offenses or prior misconduct.[1] Such evidence carries with it the danger that a defendant in a criminal action may be convicted of an implied charge of having a propensity to commit crimes generally rather than the specific offense for which he is on trial. *Williams v. State*, supra; *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr. App.1983); *Bates v. State*, 643 S.W.2d 939 (Tex.Cr.App.1982).

There is, however, an equally well established corollary to the general rule which prohibits evidence of prior misconduct from being admitted at trial. In some cases circumstances exist which justify the admission of such evidence in spite of its inherent dangers.

■ It is, for instance, well established that evidence of extraneous transactions may be legitimately admitted into evidence to show proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Federal Rules of

1. The terms "extraneous offense" and "prior misconduct" are not interchangeable. The former term refers to prior conduct which constitutes an offense under the penal code. The latter refers to acts which, while not inherently criminal, are regarded in our society as morally or ethically reprehensible. For our purposes, it is not necessary to determine if the alleged cruelty to animals is a criminal offense (which it clearly would be if committed by an adult: V.T.C.A., Penal Code, Section 42.11) or merely delinquent behavior which in our jurisdiction is not regarded as criminal conduct per se, but rather as a matter of health and welfare and handled by the civil court system. Our case law makes it clear that we analyze the admission of both "extraneous offenses" and "prior misconduct" in the same manner. See, *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985). In the *Plante* case the prior misconduct involved a multitude of unpaid debts, which when viewed in accumulation showed a likelihood of intent to steal property and services.

Evidence, Rule 404(a). The case law in our jurisdiction has also established that prior misconduct evidence may be relevant to and properly admitted to show malice, the existence of a scheme or plan or to refute a defensive theory. *Albrecht v. State,* supra.

 As this Court has stated in the *Williams* case, there is no hard and fast rule concerning when and under what circumstances evidence of prior misconduct will be admitted into evidence. Rather, the circumstances which justify the admission of this form of evidence are as varied as the factual circumstances of each case wherein the question arises. See *Albrecht v. State,* at 100. The only "test" or standard which has any true viability is to ascertain whether the prosecution can show (1) that the offense or transaction is relevant to a material issue in the case, and (2) that the probative value of the evidence to the trier of fact outweighs its prejudicial or inflammatory nature. *Plante v. State,* 692 S.W.2d 487 (Tex.Cr.App.1985); *Williams v. State,* supra; *Murphy v. State,* 587 S.W.2d 718 (Tex.Cr.App.1979); see also *Rubio v. State,* supra, (concurring opinion). This two part evaluation is left to the trial judge and absent a clear abuse of discretion his decision will not be disturbed on appeal.

 In the case before us, it is clear that the evidence is relevant to a material issue in the State's case. This is true under any theory under which the State offered the evidence. The State urged the introduction of this evidence first, and apparently primarily to show knowledge of the workings of electricity. The testimony does indeed show that appellant had a working knowledge of the means by which electricity can be used to cause death. The testimony further revealed that appellant is unusually comfortable with electricity and is not reluctant to work with it in circumstances in which most people would avoid any proximity with electricity.

This unusual degree of comfort with electricity and the appellant's apparent propensity to kill by electrocution also serve to identify appellant as a person who had, in the past, habitually caused death by electrocution. This in turn makes it more likely that if the victim was murdered in the manner alleged it was indeed the appellant who committed the crime. The State thus offered this evidence to "identify" appellant by establishing that killing by electrocution is a "signature" of his modus operandi. This means of "identifying" a defendant is more commonly used when the issue is not, as here, whether a crime was committed, but rather when the issue is who committed a crime which no one questions took place. Nonetheless, it is fair to say that the State's theory of the case was (1) a crime was committed and (2) it was appellant who committed the crime. Therefore, a material issue in the State's case was the identity of the criminal actor and the testimony aided in identifying appellant as the person who committed the crime.

Furthermore, appellant had rebutted the State's theory of the case as a homicide by offering evidence to sustain his own theory of accidental electrocution. The evidence was, therefore, relevant to rebut the defensive theory of accident or mistake. Evidence that appellant had previously intentionally and knowingly caused the death of animals by electrocution was also arguably, though somewhat more tenuously, relevant to prove appellant's intent to commit the crime in question. The State has made a compelling argument, with which we are in agreement, that the evidence was relative to material elements of their theory of the case.

The State's arguments are all the more compelling because the State's case was based entirely on circumstantial evidence. It is true that this Court has made it clear that a circumstantial evidence case is no longer to be evaluated under a standard different from that of a direct evidence case. *Williams v. State,* supra; *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App.1985).

 We must nonetheless hold that the prejudicial and inflammatory nature of this evidence was so great that it outweighed the probative value it may have

had in establishing the theory of the State's case. As we said earlier in this opinion, we will not fashion a "per se" rule that a transaction is too remote in time to be introduced into evidence at trial. The period of time separating the extraneous transaction from the charge in chief is a factor to be considered, along with all other relevant factors.[2] In this case, it is not so much the length of time alone which vitiates the probative value of the evidence in question. Rather, it is the fact that appellant was, according to testimony at trial, between the ages of ten and twelve when he was alleged to have committed the acts in question.

■ The State would no doubt argue that all this goes to the weight and not the admissibility of the evidence. We do not agree. It is the duty of the trial court to balance all factors before admitting inherently prejudicial evidence to the trier of fact. It is the court's duty to determine if the risk to our fundamental scheme of justice is justified by the probative value of the evidence in question. If this evidence is permitted in this case, it would be equally logical to admit into evidence the fact that the defendant in a theft case had stolen property at the age of ten or that the defendant accused of an assaultive offense had struck a playmate as a child.

■ As we have stated, it is clear to this Court that it was error to admit into evidence the testimony concerning the appellant's prior misconduct. However, this determination does not end our inquiry. An error in admitting evidence of uncharged misconduct is not invariably so prejudicial that a reversal of conviction is required. *Gentsch v. State,* 654 S.W.2d 768 (Tex.Cr. App.1983); *Prior v. State,* 647 S.W.2d 956 (Tex.Cr.App.1983). It is necessary at this point to analyze the admission of this evidence to determine if appellant's cause suffered a degree of harm which will require

this Court in the interest of justice to order a reversal and remand the cause for retrial.

■ It is axiomatic that if one offers extraneous transaction evidence to prove a given proposition, whether a limiting instruction is given or received, the evidence should be used for the purpose for which it was requested and no other. *Elkins v. State,* 647 S.W.2d 663 (Tex.Cr.App.1983); E. Imwinklreid, Uncharged Misconduct Evidence, Sections 9:68; 9:72 (1985). In this case, it is clear that the evidence was used to inflame the minds of the jurors during the State's final argument in both phases of the trial. At one point, in final argument during guilt-innocence, the district attorney made the following statement:

"... I don't think little old kids, when you are talking about a subject—What is nearer and dearer to boys than puppies and things? I guarantee you, somebody hurt my dog when I was a little kid, I would remember it. That is such a depraved act, anyway. But the whole point is, folks: If he is pealing (sic) wires back and wrapping them to little dogs, and plugging them in—Of course, he don't recall whether he ever said that. He certainly won't ever recall it. But that shows the depravity of this man's mind. You've got an evil, evil man in front of you...."

At another, earlier point in the State's final argument the following statement was made:

"... I mean, there are some things that make a lasting impression on your mind. How does it feel to take a little helpless and defenseless animal like that, and take an extension cord like that right there, and peel back all of that insulation off of those wires, and then you loop one wire around one front paw, and the other wire around the other paw, and plug it in...."

---

**2.** But see *Robledo v. State,* 480 S.W.2d 401 (Tex. Cr.App.1972). In the *Robledo* case, we held that a prior conviction for a nearly identical offense which occurred four years and three months was too remote to be probative of *intent.* If intent were the only issue, we would be con-strained to follow *Robledo.* When identity and knowledge are at issue, temporal remoteness is not nearly so important a factor in determining probative value. *United States v. Rubio,* 674 F.2d 1067 (5th Cir.1982).

It is clear that the evidence was not sought nor used solely in accordance with the State's stated purpose in requesting it. The prejudicial and inflammatory effect of the improper admission of this evidence was thus aggravated. For this reason and reasons stated above, we cannot hold that the admission of this evidence was harmless beyond a reasonable doubt.

For this reason, we must reverse the judgments of the Court of Appeals and trial court and the cause is remanded to the trial court.

ONION, P.J., and TEAGUE, J., concur.