Ronald Glenn **CORLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–98–00063–CR

Court of Appeals of Texas, Austin.

Feb. 25, 1999.

Kenneth G. Mahaffey, Austin, for Appellant.

Ronald Earle, Dist. Atty., Karyn D. Scott, Asst. Dist. Atty., Austin, for State.

Before Chief Justice ABOUSSIE, Justices JONES and YEAKEL.

MARILYN ABOUSSIE, Chief Justice.

Appellant was convicted in a bench trial of attempted aggravated kidnapping and attempted aggravated sexual assault. *See* Tex. Penal Code Ann. § 15.01 (West 1994), § 20.04 (West Supp.1999) & § 22.021 (West 1994 & Supp.1999). Due to prior convictions, appellant's punishment was enhanced to fifty years' imprisonment. In a single point of error, appellant argues that the trial court erred in admitting evidence of a thirteen-year-old extraneous offense offered to prove appellant's intent to commit aggravated sexual assault. We will affirm the judgment of conviction.

### STATEMENT OF FACTS

In the early morning hours of August 25, 1996, Christina Alonzo left a club on Sixth Street in Austin. As she approached her car, Alonzo noticed that appellant, a stranger, gave her a "really odd look" as he ran across a nearby street. Once across, appellant stood on the curb and stared at Alonzo. Appellant's attentions frightened Alonzo, and she got in her car and proceeded to drive home. She attempted to take a shortcut, got lost, and arrived at her apartment complex about twenty or thirty minutes later.

When Alonzo got out of her car and began walking to her first-floor apartment, she again saw appellant. As she walked past him, appellant grabbed her from behind and pulled her to the ground. Appellant pinned Alonzo on her back and repeatedly tried to shove a rag soaked with an unidentified chemical into her mouth as Alonzo screamed and struggled to get away. Appellant repeatedly told Alonzo, "Shut up bitch or I'm going to choke you." When appellant was able to get the rag into Alonzo's mouth, he placed both hands on her neck and threatened to choke her in seven seconds if Alonzo

didn't "shut up." Alonzo then felt the pressure of appellant's hands as he began to count backwards from the number seven.

Steven Pritchard, Alonzo's neighbor, heard Alonzo scream and ran outside carrying a shotgun. Pritchard found Alonzo on the ground, straddled by appellant who appeared to be choking her with a mechanic's rag. He heard appellant say to Alonzo, "Shut up or I'm going to kill you." When appellant saw Pritchard's shotgun, he quit his attack and ran. Pritchard chased him and saw appellant get into a pickup truck and drive away. Pritchard memorized the truck's license plate number. Pritchard then proceeded to help Alonzo up to his apartment where his friend tended to her until the police arrived.

Alonzo and Pritchard subsequently relayed their stories to the police. Appellant was arrested approximately two months later. After Alonzo identified appellant as her attacker from a photo lineup, appellant was indicted and charged with aggravated kidnapping, attempted aggravated sexual assault, attempted murder, and aggravated assault.

At trial, the State proffered to the court a verbal summary of the anticipated testimony of Peggy Hartman, the victim of a misdemeanor offense[1] committed by appellant thirteen years earlier. The State argued that admission of this extraneous offense was necessary in order to prove appellant's specific intent to sexually assault Alonzo. The trial court determined that the evidence was relevant to the issue of appellant's intent and that the probative value of the evidence substantially outweighed any potential danger of unfair prejudice. Over appellant's objection, the trial court agreed to consider Hartman's testimony for the limited purpose of establishing appellant's intent to sexually assault Alonzo.

Hartman testified that in September 1983, she left the bar where she worked in Dallas at approximately 2:00 a.m., went to a 7-11 to buy a soft drink, counted her tips in the car, and then drove towards her home in Arling-

---

1. Though Hartman's testimony established that appellant's assault against her was sexual in nature, appellant's counsel's statements on the rec-

ord indicate that the case against appellant was "pled out" as a Class A misdemeanor assault.

ton. She took a wrong turn and got lost before she entered the highway. She arrived at her home approximately forty-five minutes later. Hartman drove into the parking lot of her apartment complex and was approached by appellant as she got out of her car. He asked her where an apartment was located and she pointed in the direction of the number he was seeking. Hartman then turned back to her vehicle to collect her things. Appellant grabbed Hartman from behind, put a knife to her throat, and shoved a cloth of some sort in her mouth. He told her not to scream or he would kill her, and he grabbed her and took her to a wooded area behind the apartment building. Appellant threw Hartman on the ground, got on top of her, told her he was going to rape her, pulled her pants down and her shirt up, and proceeded to kiss and fondle her neck, chest, and breasts. Hartman pretended to throw up and appellant backed off momentarily. Hartman asked if she could get a cigarette out of her purse, and she gave him one as well. She proceeded to talk with him in order to convince him that he did not need to use force on her, that she would go out with him the next day. Appellant told Hartman that he had been following her for a week and had followed her home from Dallas that night. After several hours, appellant let Hartman go without sexually assaulting her and Hartman went into her apartment and contacted the police. According to appellant's counsel's statements to Hartman on cross-examination, appellant was convicted of a Class A misdemeanor assault for the attack on Hartman.

At the close of the evidence, the trial court found appellant guilty of attempted aggravated kidnapping, a lesser included offense of aggravated kidnapping, and attempted aggravated sexual assault. Appellant was acquitted of the other two counts. In his single point of error, appellant argues that the trial court abused its discretion when it admitted Hartman's testimony into evidence for the purpose of establishing appellant's intent to commit aggravated sexual assault against Alonzo.

## STANDARD OF REVIEW

 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. Relevant evidence is admissible except as otherwise provided by constitution, statutes, the rules of evidence, or other rules prescribed by statutory authority. *See* Tex.R. Evid. 402. Texas Rule of Evidence 404(b) requires evidence of an extraneous offense to be relevant apart from its tendency to prove the character of a person in order to be admissible. *See* Tex.R. Evid. 404(b). "Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion." *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993). Although evidence of an extraneous offense may be relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex.R. Evid. 403. We review a trial court's analysis of the probative value of an extraneous offense under an abuse of discretion standard. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd).

 An appellate court may reverse a trial court's decision for an abuse of discretion only when it appears that the court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *See DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996). Even if the appellate court would have reached a different result, it should not intercede as long as the trial court's ruling was within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 380–81 (Tex.Crim.App. 1990) (op. on reh'g).

## DISCUSSION

 We must first consider whether appellant's assault on Hartman was relevant to the instant case. Texas Rule of Evidence 404(b) provides:

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent,* preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Tex.R. Evid. 404(b) (emphasis added). Extraneous offense evidence that serves any "other purposes" is relevant if it serves to make "more probable or less probable" an elemental fact. *See* Tex.R. Evid. 401; *Montgomery,* 810 S.W.2d at 376; *Johnson,* 932 S.W.2d at 302. Specific intent to commit aggravated sexual assault is an essential element of attempted aggravated sexual assault. *See* Tex. Penal Code Ann. § 15.01 (West 1994) & § 22.021 (West 1994 & Supp.1999). Therefore, appellant's intent was an elemental fact in this case.

> [W]here intent is a material issue and is not inferable from the act itself, evidence of other acts probative of such intent is relevant. . . . Where the state's direct evidence, however, clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant . . . the offer of other crimes is unjustified due to lack of relevancy.

*Rankin v. State,* 974 S.W.2d 707, 719 (Tex. Crim.App.1996) (op. on reh'g).

In the instant case, Pritchard's early intervention prevented appellant from carrying his attack to fruition. Because of the intervention, it is difficult to infer appellant's intent to sexually assault Alonzo from the act itself. Moreover, appellant attempted to rebut any inference of his intent to sexually assault Alonzo through his opening statement, during which appellant's counsel argued that appellant's conduct rose only to the level of a "drunken misdemeanor." Appel-

lant's intent cannot be inferred from his actions against Alonzo and he attempted to rebut the evidence of specific intent to sexually assault her; therefore, the trial court did not abuse its discretion in determining that evidence of the extraneous offense was relevant to prove appellant's intent.

Appellant's counsel objected to the admissibility of the extraneous offense evidence and the trial court ruled that it was admissible under Rule 403. *See* Tex.R. Evid. 403 (relevant evidence is admissible provided its probative value substantially outweighs the danger of unfair prejudice); *Rankin,* 974 S.W.2d at 711 (relevant extraneous evidence may be disallowed by the trial court if it is excessively prejudicial). Several factors have been used to measure the probative value of extraneous offense evidence. These include: (1) similarity between the extraneous offense and the offense charged; (2) closeness in time of the extraneous offense to the charged offense; and (3) availability of alternative sources of proof. *See Robinson v. State,* 701 S.W.2d 895, 898–99 (Tex.Crim.App.1985).

The attack involved in the instant case and that of the extraneous offense are substantially similar. In both instances, appellant followed his prospective victim home without her knowledge. In both instances, the victims were young females who were strangers to appellant. Both attacks began late at night at the victims' apartment complex parking lots shortly after they got out of their vehicles. Both attacks involved appellant shoving a rag into the victims' mouths. In both instances, appellant threatened to kill the victims if they screamed. These similarities lend substantial probative value to the extraneous offense evidence.[2]

Availability of alternative sources of proof is a second factor that the trial court

---

**2.** We note that there are some differences between the instant attack and the extraneous offense. For example, appellant held a knife to Hartman's throat during the extraneous offense, while no weapon was used against Alonzo. The most significant difference is the fact that appellant had the time to drag Hartman into the woods, make numerous sexual advances toward her, and threaten to rape her. Although the extraneous offense was not exactly the same as

the offense charged, it need only be substantially similar to be admissible. *See Johnson,* 932 S.W.2d at 302. Moreover, when extraneous offense evidence is offered on the issue of intent, "there is less need to show significant identity between the facts of the other transactions and those of the case being tried" than there would be if, for example, the issue was one of identity. *See id.*

must consider when weighing the probative value of extraneous offense evidence. As noted earlier, the material issue in this case was intent. Where intent cannot be readily inferred from the act itself, other evidence relevant to that intent, even evidence of extraneous offenses or transactions, will invariably be more probative than prejudicial. *See Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim.App.1985). Because Pritchard interrupted appellant's attack on Alonzo, the court could not determine appellant's ultimate intent from the act itself. Based on the evidence presented at trial, appellant could have intended a variety of harm from his attack. Because his specific intent to commit sexual assault cannot be readily inferred from the attack itself, the lack of available alternative sources of proof increased the probative value of the extraneous offense evidence.

A final factor that the trial court must consider is the closeness or remoteness in time of the extraneous offense to the charged offense. The extraneous offense occurred approximately thirteen years before the attack on Alonzo. A period of incarceration, however, is relevant to the consideration of the closeness in time of the extraneous offense to the offense charged. *See Stringer v. State*, 845 S.W.2d 400, 402 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd). The evidence at trial established that appellant was incarcerated for either three or five consecutive years during that thirteen-year period,[3] during which time appellant lacked the opportunity to commit sexual assault on a stranger. Appellant argues nonetheless that the remoteness of the offense significantly lowers its probative value.

We note that there is no *per se* rule as to when an extraneous offense is too remote in time to be introduced in evidence. *See Templin v. State*, 711 S.W.2d 30, 34 (Tex.Crim.App.1986). A line of cases decided before September 1, 1986, the date the Texas Criminal Rules of Evidence were first enacted, held that extraneous offenses committed more than a few years before the charged offense were too remote to be admissible. *See Bachhofer v. State*, 633 S.W.2d 869, 872 (Tex.Crim.App.1982) (extraneous offense committed four years and four months prior to instant offense too remote); *James v. State*, 554 S.W.2d 680, 683 (Tex.Crim.App. 1977) (sexual assault committed two years and nine months prior to instant offense too remote); *Robledo v. State*, 480 S.W.2d 401, 402 (Tex.Crim.App.1972) (forgery committed four years and three months prior to instant offense too remote). While the *Templin* case, decided in April 1996, held that ten to fifteen-year-old extraneous offenses were inadmissible, the court noted that "[t]he period of time separating the extraneous transaction from the charge in chief is a factor to be considered, *along with all other relevant factors*." *Id.* at 34 (emphasis added). The *Templin* court indicated that the factor that most vitiated the probative value of the evidence in that case was not the remoteness of the extraneous offenses but the fact that appellant was between the ages of ten and twelve when he was alleged to have committed the extraneous offenses. *See Templin*, 711 S.W.2d at 34. In a footnote following this statement, the court acknowledged that a four-year-old conviction was held to be too remote to be admissible to prove intent in the *Robledo* case and stated, "If intent were the only issue, we would be constrained to follow *Robledo.*" *Templin*, 711 S.W.2d at 34 n. 2.

We believe these cases are distinguishable. First, the *Templin* court's comment regarding *Robledo* is dicta buried in a footnote, and *Robledo* focused solely on the remoteness of the extraneous offense, without considering the other factors set out in *Robinson*. *See Linder v. State*, 828 S.W.2d 290, 297 (Tex. App.—Houston [1st Dist.] 1992, pet ref'd) ("remoteness does not *per se* render an extraneous offense irrelevant"). In *Bachhofer*, the alleged extraneous offense took place in another state, and there was no final convic-

---

**3.** Paul Bailey testified that he and his wife, as part of a prison ministry, began writing to appellant in 1987. He explained that this continued until appellant was released "two or three years later." Bailey then stated that he recalled that appellant was released in 1992. Appellant did not rebut or clarify this testimony on cross-examination. Appellant's counsel later stated to the trial court that appellant was released in 1990. Both parties note in their appellate briefs that the amount of time appellant was incarcerated was not clearly established at trial.

tion for the extraneous offense. *See Bachhofer,* 633 S.W.2d at 872. In *James,* the court emphasized that the extraneous offense was committed by appellant when he was younger than thirteen years old and took place in a different state. *See James,* 554 S.W.2d at 683. In the case before us now, appellant was approximately thirty-two years old when he committed the extraneous offense.

Another and more important distinguishing characteristic of these earlier cases is that they were tried under common law principles "which tended to favor exclusion of evidence." *Montgomery,* 810 S.W.2d at 375. The court of criminal appeals noted in *Montgomery* that the "new rules favor the admission of all logically relevant evidence." *Id.* The Fifth Court of Appeals, noting as we have here that *Bachhofer, James,* and *Robledo* were decided prior to the enactment of the rules of evidence, has held that an unadjudicated ten-year-old extraneous offense was not so remote as to bar its admission. *See Lavarry v. State,* 936 S.W.2d 690, 695 (Tex.App.—Dallas 1996, pet. ref'd); *see also Gonzales v. State,* 838 S.W.2d 848, 863 (Tex. App.—Houston [1st Dist.] 1992) (questioning the validity of *Bachhofer* following the enactment of Rule 404), *pet dism'd, improvidently granted,* 864 S.W.2d 522 (Tex.Crim.App. 1993).

 Finally, we note that *Templin, Bachhofer,* and *James* were all tried to a jury[4] while the instant case was a bench trial. Although we no longer presume that a trial court will disregard inadmissible evidence, *see Gipson v. State,* 844 S.W.2d 738, 740–41 (Tex.Crim.App.1992), when a case is tried to a trial court rather than to a jury, the danger that the trier of fact will consider extraneous offense evidence for anything other than the limited purpose for which it is admitted is reduced, and the likelihood that the extraneous evidence will unfairly prejudice the defendant is diminished.

For the reasons we have stated above, and taking the period of incarceration into account, we hold that the remoteness of the extraneous offense in this case was not so extreme as to render the offense inadmissible. Furthermore, the similarities between the two attacks and the State's lack of alternative sources of proof serve to increase the probative value of the extraneous offense evidence. Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence of the extraneous offense pursuant to Rule 403.

## CONCLUSION

Having found that the trial court did not abuse its discretion in admitting the evidence of the extraneous offense, we overrule appellant's single point of error and affirm the judgment of conviction.

---

4. The *Robledo* opinion does not indicate whether it was tried to the trial court or to a jury.