

## NUMBER 13-13-00121-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

GEORGE VILLARREAL CRUZ, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

**On appeal from the 105th District Court
of Kleberg County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes and Longoria
Memorandum Opinion by Justice Longoria**

George Villarreal Cruz was convicted of three counts of indecency with a child by contact and one count of indecency with a child by exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (a)(2)(A) (West 2011). The jury assessed a forty-five year prison

sentence for counts one, two, and three (indecency by contact) and a fifteen year sentence for count four (indecency by exposure). By four issues, Cruz contends that (1) the evidence is insufficient to support the convictions, (2) the trial court erred in admitting evidence of an extraneous offense, (3) the sentences are disproportionate to the seriousness of the offenses, and (4) there was error in the jury charge. For the reasons set forth below, we affirm.

## I. BACKGROUND

In relevant part, the indictment charged Cruz with three counts of indecency with a child by contact and one count of indecency with a child by exposure, as follows:

### Count 1

[O]n or about May 1, 2009, in Kleberg County, Texas, [Cruz] did then and there with intent, to arouse or gratify the sexual desire of defendant, intentionally or knowingly engage in sexual contact with KC by touching the breast of KC, a child younger than 17 years of age . . . .

### Count 2

[O]n or about May 1, 2009, in Kleberg County, Texas, [Cruz] did then and there with intent, to arouse or gratify the sexual desire of defendant, intentionally or knowingly engage in sexual contact with KC by touching the genitals of KC, a child younger than 17 years of age . . . .

### Count 3

[O]n or about May 1, 2009, in Kleberg County, Texas, [Cruz] did then and there with intent, to arouse or gratify the sexual desire of defendant, intentionally or knowingly cause KC, a child younger than 17 years of age, to engage in sexual contact by causing KC to touch the genitals of Defendant . . . .

### Count 4

[O]n or about May 1, 2009, in Kleberg County, Texas, [Cruz] did then and there with intent, to arouse or gratify the sexual desire of defendant, intentionally or knowingly expose Defendant's genitals knowing that KC, a child younger than 17 years of age, was present.

2

The jury found Cruz guilty on all four counts, and this appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, Cruz challenges the sufficiency of the evidence to support his convictions because the State's case was based on the testimony of the child victim, KC, who was only six years old at the time of the offenses.

## A. Standard of Review

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id.* "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* "Direct and circumstantial evidence are treated equally." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

**B. Applicable Law**

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

In relevant part, the Texas Penal Code provides as follows:

> A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:
>
>> (1) engages in sexual contact with the child or causes the child to engage in sexual contact; or
>>
>> (2) with intent to arouse or gratify the sexual desire of any person . . . exposes the person's anus or any part of the person's genitals, knowing the child is present . . . .

TEX. PENAL CODE ANN. § 21.11(a)(1)–(2)(A). In this section of the penal code, "sexual contact" is defined as follows:

> "[S]exual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
>> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>>
>> (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

*Id.* § 21.11(c).

4

## C. Discussion

At trial, KC, the victim of the offenses, testified that Cruz, her grandfather, "touch[ed] her boobs" or breasts and also touched her "privates" or vagina. According to KC, Cruz took out "[h]is middle part" or "private part," so she was able to see his penis, and he then made her touch it. In addition, the trial court admitted into evidence State's Exhibit 3, titled "Medical Forensic Examination Record," which was signed by a sexual assault nurse examiner for Driscoll Children's Hospital. The exhibit indicates that KC was six years old when she was examined and that she gave the following statement:

> My grandpa George touched my part (patient indicates female sexual organ by pointing), my tushy (patient indicates buttocks by pointing) and my breasts with my clothes on. He showed me a video with grownups doing I don't know. There was a boy slapping a girl on the butt. They didn't have clothes on, but I really didn't look at it. He left his juice from his thing on the bed and in the living room. His thing was wrinkly and soggy. He made me touch it. He put my face into it, but I pulled away. I put his little part down so it dripped on the floor and not on me.

Cruz contends that the evidence is insufficient because KC was the only witness who testified to the actual events constituting the offenses and she gave conflicting testimony about how and where Cruz touched her. Cruz suggests that KC may have been coached by family members with whom he has acrimonious relationships "as an act of revenge."

"The testimony of a child victim alone is sufficient to support a conviction for indecency with a child." *Navarro v. State*, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Although Cruz contends that the victim may have been coached or improperly influenced by other family members, "[t]he jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony." *Jones v.*

5

*State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). "Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Id.* Therefore, we will not disturb the jury's finding of guilt.

Based on the foregoing, any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *See Clayton*, 235 S.W.3d at 778. Accordingly, Cruz's first issue is overruled.

### III EVIDENCE OF EXTRANEOUS OFFENSES

In his second issue, Cruz contends that the trial court abused its discretion in admitting evidence of extraneous offenses that he allegedly committed in 1992. *See* TEX. R. EVID. 404(b).

### A. Applicable Law

Rule 404(b) of the Texas Rules of Evidence provides as follows:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

*Id.*

### B. Standard of Review

"The standard of review for a trial court's ruling under the [Texas] Rules of Evidence is abuse of discretion." *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). "If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Id.* (quotations omitted). "Appellate courts will uphold a trial court's ruling on

6

the admissibility of evidence as long as the trial court's ruling was at least within the zone of reasonable disagreement." *Id.* (quotations omitted).

## C. Discussion

In this case, the alleged extraneous offenses were sexual in nature and also involved a child victim, "SAG." At trial, SAG testified, over Cruz's objections, that on "several different occasions" when she was approximately seven years old, Cruz showed her pornographic videos, touched her breasts and vagina, and exposed his penis and testicles to her. According to SAG, on the worst of these occasions, Cruz said he was going to teach SAG and Cruz's stepson, who was "about the same age" as SAG, "how to have sex." SAG testified in relevant part as follows:

> He took off my dress, turned me around, placed me in front of him, got my panties [off]. At this time I believe his pants were already down. He got like in a squat mode position. After he did that, he used his penis and rubbed it against my vagina repeatedly, repeatedly and repeatedly showing us that that's the way you have sex.

Cruz contends that the trial court abused its discretion in admitting the testimony because it involved conduct that allegedly occurred twenty years ago, which according to Cruz, is too remote to be relevant. *See* TEX. R. EVID. 401. Cruz also contends that the testimony was inadmissible because its unfairly prejudicial effect substantially outweighed its probative value. *See* TEX. R. EVID. 403.[1]

The State contends that the evidence was admissible because the offenses involved similar "patterns," which include the following: (1) both victims were between the ages of six and seven, (2) both victims were left in Cruz's care as a babysitter, (3)

---

[1] During a hearing held outside the presence of the jury, counsel for Cruz objected to the extraneous offense evidence based on Rules 401, 403, and 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 401, 403, 404(b). The trial court overruled the objections. *See* TEX. R. EVID. 103(a)(1) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.").

7

Cruz showed both victims pornography, and (4) Cruz told both victims that he was going to teach them how to have sex. According to the State, the similar patterns of the offenses formed a "signature" that made the evidence of extraneous offenses relevant and admissible under the "other purposes" prong of Rule 404(b). *See* TEX. R. EVID. 404(b); *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) ("[E]xtraneous-offense evidence is admissible to prove identity when the common characteristics of each offense are so unusual as to act as the defendant's 'signature.'"). For the reasons set forth below, we conclude that the trial court did not abuse its discretion.

The Texas Court of Criminal Appeals has explained that, without more, evidence of a "'system' or 'pattern' of committing offenses by itself . . . [creates] exactly the forbidden inference" that Rule 404(b) is designed to prevent. *Johnston v. State*, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004). "That is why 'pattern' is not listed in Rule 404(b) as an exception." *Id.* However, "[p]atterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds" in the "other purposes" prong of Rule 404(b). *Id.*

At trial, all of the State's evidence—other than the extraneous offense evidence—was based on KC's account of what happened. There were no other eyewitnesses who could give direct testimony about Cruz's conduct. As a defensive strategy, Cruz called into question the truth of KC's testimony and outcries. Cruz suggested that she was coached and had told a series of falsehoods about him doing things he never did. The Texas Court of Criminal Appeals has explained that, under circumstances such as these, extraneous offense evidence may be admissible to bolster the credibility of the child victim:

8

> Where the accused calls . . . [the] credibility [of a child victim] into question, evidence of other identical or similar acts of sexual misconduct perpetrated by a parent [or grandparent] against his own child [or grandchild] may well serve to shore up testimony of the child if in logic it shows a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might otherwise be loathe to attribute to a parent [or grandparent] toward his child [or grandchild]. Where under the circumstances of the particular case the evidence logically serves such a purpose, it may have relevance under Rule 404(b) . . . apart from character conformity.

*Montgomery v. State*, 810 S.W.2d 372, 394 (Tex. Crim. App. 1991) (op. on reh'g).

In this case, the evidence of extraneous offenses "show[ed] a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct)." *Id.* Thus, it had "relevance under Rule 404(b) . . . apart from character conformity." *Id.*

Moreover, we reject Cruz's argument that the extraneous offenses were too remote in time to be relevant because there is no *per se* rule regarding remoteness in time. *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.) ("[T]here is no *per se* rule as to when an extraneous offense is too remote in time to be introduced in evidence."). Rather, "[s]everal factors have been used to measure the probative value of extraneous offense evidence." *Id.* at 619. "These include: (1) similarity between the extraneous offense and the offense charged; (2) closeness in time of the extraneous offense to the charged offense; and (3) availability of alternative sources of proof." *Id.*

In this case, the offenses were extremely similar. Therefore, the first factor tends to demonstrate the probative value of the evidence of the extraneous offenses. *See id.* However, we agree with Cruz that the remoteness-in-time factor tends to diminish its probative value. *See id.* Finally, we note that no alternative source of proof was

9

available.  *See Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003) ("If the issue is disputed and the proponent has no other evidence to prove the fact, then the proponent's need for the evidence is great, and that weighs in favor of admitting the evidence."); *Montgomery*, 810 S.W.2d at 392 ("It is also faithful to this Court's long tradition of determining the admissibility of extraneous offense evidence on appeal by reviewing not only the relevance of that evidence, but the State's need for it as well.").

As noted above, the State's case depended entirely on KC's testimony and outcries.  By attacking the truth of KC's testimony and outcries, Cruz attempted to eliminate the State's only source of proof.  This enhanced the probative value of the evidence of the extraneous offenses.  *See Corley*, 987 S.W.2d at 619.  Accordingly, based on the foregoing, we conclude that the trial court did not err in concluding that the evidence was relevant and admissible under Rule 404(b).  *See* TEX. R. EVID. 404(b).[2]

Nevertheless, Cruz contends that the trial court should have excluded the evidence under Rule 403 because the danger of unfair prejudice substantially outweighed its probative value.  *See* TEX. R. EVID. 403.[3]  In light of Cruz's Rule 403 objection, "the trial judge . . . [was required to] weigh the probativeness of the evidence to see if it . . . [was] substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence."  *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

---

[2]  On appeal, Cruz has not challenged the trial court's ruling under Rule 404(b) except to the extent that he has argued that the extraneous offenses were too remote in time to be relevant.  *See* TEX. R. EVID. 404(b).

[3]  Other than noting in its appellate brief that the trial court must be given "wide latitude" in conducting a balancing of probative value versus danger of unfair prejudice under Rule 403, the State has not addressed Cruz's argument that the evidence was inadmissible under Rule 403.  *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g) (citing TEX. R. EVID. 403).

"In keeping with the presumption of admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial." *Id.* Factors which should go into the Rule 403 balancing test include:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

> (2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way;

> (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

> (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* at 170 (quotations omitted).

In cases such as this, the Texas Court of Criminal Appeals has indicated that "[u]nless the accused denied the offense, or impeached the child complainant, the [danger of unfair] prejudice . . . [is] deemed weightier than the probative value [of the extraneous offenses committed against other child victims]." *Montgomery*, 810 S.W.2d at 397. This is because "[b]oth sexually related misconduct and misconduct involving children are inherently inflammatory." *Id.*

In this case, Cruz denied the offenses and attempted to impeach the child complainant. Therefore, the danger of unfair prejudice was not necessarily weightier than the probative value of the evidence of the extraneous offenses. *See id.* Furthermore, "the trial court's determination . . . [was] reasonable in view of all relevant facts." *Id.* at 169.

11

The extraneous offense evidence served to make more probable a fact of consequence: the truth of KC's testimony and outcries regarding the offenses committed against her. By establishing that he did similar things to a different child victim under similar circumstances, the extraneous offense evidence corroborated KC's testimony and made it more credible than it otherwise would be standing alone. *See Montgomery*, 810 S.W.2d at 394. At the same time, we recognize "the repulsion and horror of the general public toward offenses of this nature, which could potentially affect the jury in an emotional way." *See Santellan*, 939 S.W.2d at 169 (referring to evidence of an extraneous offense of abuse of a corpse). We also recognize that the State's presentation of the extraneous offense evidence required a relatively substantial amount of time because the State presented the testimony of multiple witnesses. *See Santellan*, 939 S.W.2d at 170. However, by attacking the truth of KC's testimony and outcries, Cruz put the State's entire case at issue, including all the essential elements of the offenses. *See* TEX. PENAL CODE ANN. § 21.11(a)(1)–(2)(A), (c). Under these circumstances—particularly in light of the absence of any other eyewitnesses who could give direct testimony about Cruz's conduct—the State had a compelling need to present additional evidence to corroborate KC's testimony and outcries. *See Santellan*, 939 S.W.2d at 170. Based on the foregoing, we conclude that the trial court was within the zone of reasonable disagreement when it performed the balancing test under Rule 403 and concluded that the evidence was admissible. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) ("An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement.").

Furthermore, even assuming *arguendo* that the trial court abused its discretion in admitting the evidence, we conclude that the error, if any, was not reversible. *See* TEX R. APP. P. 44.2(b); *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g) ("We apply the rule 44.2(b) harm standard . . .[to] evidence erroneously admitted under rule 404(b) . . . ."). "In conducting a harm analysis, our inquiry is to determine whether the admission of the evidence had an effect on [an] appellant's substantial rights . . . ." *See Hucks v. State*, 348 S.W.3d 359, 364 (Tex. App.—Amarillo 2011, no pet.). "A substantial right is implicated when the error had a substantial and injurious effect on the jury's verdict." *Id.* at 365. "In order to ascertain the effect the error may have had on the jury's verdict, we are directed to consider everything in the record, including all of the evidence received by the jury and how the alleged error might be considered in connection with other evidence supporting the verdict." *Id.* "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire and whether the State emphasized the error." *Haley v. State*, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005).

In relevant part, the State argued in its closing argument:

This case is about two people. They're the only names you're going to see in here, George Cruz and KC.

When you go back to deliberate, your world has to revolve around George Cruz and KC. That's it. You can't think of anything outside, what if, maybe, could have been, would have been. Evidence, George Cruz and KC. . . .

The 1992 conduct, you know what, he's not here on trial for that. You can't consider that in whether he did this. Don't. Don't. You can't. But you can consider if it's the same pattern. This is a same or similar-age victim. This is a girl that they were babysitting at her house. He has

13

access to her. The family trusted them. This is a girl that, over a prolonged period of time, he groomed her, first - - first with pornography. And why? Because to a kid is pornography bad? No. It's kind of interesting. . . .

In order to tell what Grandpa George did, I have to tell Mom that I did this or I did that or I did the other. This is not accidental. This is not coincidence. This is a pattern. They're going to come up and say, well, 1992, how can you figure that it's a pattern since '92. I haven't thrown a football since 1992, but I can throw a football because I learned how to throw a football. Don't act like we're different than what happened ten years ago.

The only problem is he picked a victim this time that talked. She was brave enough to sit up here and you cannot disregard it. No matter how hard you have to fight, you have to fight for KC.

In his closing, Cruz argued in relevant part as follows:

Let's talk about [SAG]. What number is this? This is the second felon the State calls to try to convince y'all of something. She's a felon. Her story changes depending on who she's telling the story to, her story about what happened in 1992, allegedly. She testified she can be and has been bribed by who of all people, Criselda Cruz. Grandma Cris has bribed her. I don't know if it was Barbie or Cinderella tickets, some kind of tickets. She got bribed?

And who went and found her? Robert, KC's dad, went and found her. She didn't go say, "I want my case prosecuted." Robert went and found her and brought up her, dragged her up here to testify. Oh, and by the way, if y'all remember her testimony, she has accused another man besides George of this type of behavior. . . .

Sergeant Larry Webb, one of the most credible, perhaps, in my opinion, I'll argue the most credible witness in this case. What did he testify to? He testified that he investigated, there was no mention of pornographic video, no mention of numerous times of George molesting or touching [SAG], as [SAG] would have you believe from her testimony. It was an isolated, one-time event, no mention of anything she said.

Talk to George, George gave a reasonable explanation, this is how it's going to be when you get married, referring to the fighting. And as you know from Sergeant Larry Webb, that case was dismissed for lack of evidence.

In relevant part, the trial court's jury charge instructed the jury as follows:

14

You are instructed that certain evidence was admitted before you in regard to the Defendant's having committed other acts than the one for which is now on trial. You are instructed that such evidence cannot be considered by you against the defendant as any evidence of guilt in this case, nor may you consider the same to determine the Defendant's character or conformity of character.

If you find and believe beyond a reasonable doubt from such testimony that other acts were committed, you may then consider the same in determining motive, intent, state of mind, modus operandi, absence of mistake or absence of accident.

In sum, as set forth above, the evidence offered at trial was sufficient to establish the elements of the offenses for each of the four counts on which Cruz was convicted. The State relied on the testimony and outcries of the child victim, KC, to prove its case. And that alone was sufficient. *See Navarro*, 241 S.W.3d at 81. The State also offered testimony from SAG concerning extraneous offenses that Cruz allegedly committed against SAG twenty years ago. The State talked about the extraneous offenses in its closing argument, but it did not unduly emphasize them. The State told the jury not to consider them as evidence of guilt in this case, but it did say they could be evidence of a "pattern."

Counsel for Cruz defended against these allegations and evidence. He pointed out that the alleged victim, SAG, who was no longer a child at the time of trial, was a felon and had been bribed and thus could not be believed. He also argued that the case was dismissed for lack of evidence.

Finally, the court's charge to the jury, quoted in relevant part above, gave the jury an appropriate and substantially correct instruction regarding the evidence of the extraneous offenses, and "absent evidence to the contrary, we presume the jury

15

followed the law provided by the charge." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (en banc).

Based on the foregoing, we cannot conclude that the error, if any, in the trial court's admission of the extraneous offense evidence had a "substantial and injurious effect on the jury's verdict." *See* TEX R. APP. P. 44.2(b). Accordingly, Cruz's second issue is overruled.

## IV. PUNISHMENT

In his third issue, Cruz argues that that the punishment assessed by the trial court was disproportionate to the seriousness of the offenses in violation of the Eighth and Fourteenth Amendments. *See* U.S. CONST. amends. VIII, XIV. To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling. *See* TEX. R. APP. P. 33.1(a)(1). A party's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for the purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.").

Having reviewed the record, we note that Cruz did not object to the sentence or assert that it was disproportionate to the seriousness of the offenses. *See* TEX. R. APP. P. 33.1(a)(1). Accordingly, he did not preserve the issue for review in this appeal. *See*

*Rhoades*, 934 S.W.2d at 120; *Noland*, 264 S.W.3d at 151. His third issue is therefore overruled.

## V. JURY CHARGE ERROR

In his fourth issue, Cruz contends that the jury charge contained error with regard to the law of parole. In analyzing a jury charge issue, our initial inquiry is whether error exists in the charge submitted to the jury. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If error is found, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* If the defendant properly objected to the erroneous jury charge, reversal is required if we find "some harm" to the defendant's rights. *Id.* We note that we have reviewed the record, and it appears that counsel did not object to the charge. Accordingly, if there is any error, we may only reverse if the record shows egregious harm. *Id.* at 743–44. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Cueva v. State*, 339 S.W.3d 839, 858–59 (Tex. App.—Corpus Christi 2011, pet. ref'd). "In determining whether . . . [Cruz] was deprived of a fair and impartial trial, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In this case, the court's charge provided in relevant part as follows:

Under the law applicable in this case, if a defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the

17

defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

We note that this is the exact language from the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2011).

Cruz argues that the charge was incorrect because the half-time requirement does not apply to the offense of indecency with a child by exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A). In relevant part, the Texas Government Code provides as follows:

> An inmate serving a sentence for an offense described by Section 3g(a)(1)(A), (C), (D), (E), (F), (G), (H), (I), (J), or (K), Article 42.12, Code of Criminal Procedure, or for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of that article, or for an offense under Section 20A.03, Penal Code, is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.

TEX. GOV'T CODE ANN. § 508.145(d)(1) (West 2004). Section 3g of Article 42.12 of the Texas Code of Criminal Procedure specifically describes indecency with a child by contact, citing penal code section 22.11(a)(1), but it does not describe indecency with a child by exposure or cite penal code section 22.11(a)(2)(A). *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(C) (West Supp. 2011).

Thus, counsel's argument appears to be correct that the trial court erred by indicating in the jury charge that all the offenses in this case are subject to the half-time requirement in section 508.145(d)(1) of the Texas Government Code, when in fact, the offense of indecency with a child by exposure is not subject to the half-time

18

requirement.  *See* TEX. GOV'T CODE ANN. § 508.145(d)(1).  Nevertheless, we conclude that the error was not egregious.  *See Ngo*, 175 S.W.3d at 743–44.

As set forth above, Cruz received a fifteen year prison sentence for the offense of indecency with a child by exposure.  However, he received a forty-five year sentence for each of the other three counts.  The sentences are running concurrently.  Thus, even assuming for the sake of argument that the error in the court's charge caused the jury to assess a greater sentence than it otherwise would on the offense of indecency with a child by exposure—which appears to be counsel's argument—there was still no actual harm to Cruz because, either way, he would be ineligible for parole until he has served half of the time on the forty-five year prison sentences that are running concurrently with the fifteen year sentence.  *See* TEX. GOV'T CODE ANN. § 508.145(d)(1).  Therefore, he has not established egregious harm.  *See Ngo*, 175 S.W.3d at 743–44.  Accordingly, we overrule his fourth issue.

## VI. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of December, 2013.

19