In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00097-CV
______________________________

 
 
IN THE INTEREST OF 
K.N., T.N., B.Z., T.B., AND L.B., CHILDREN

                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 02-0016

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross

MEMORANDUM OPINION

          Sandy Starks has filed an appeal from the termination of her parental rights to K.N.,
T.N., B.Z., T.B, and L.B. She was represented by counsel George Jones at the trial. 
Jones filed a notice of appeal on her behalf, and on the same day sought and was granted
permission to withdraw as attorney for Starks. A clerk's record was received by this Court
August 20, 2003. In our review of that record, it became apparent that the notice of appeal
was not timely filed and that no motion seeking an extension of time to file such a notice
had been filed.
          The jurisdiction of a court of appeals is invoked by timely filing documents showing
a bona fide intent to appeal. See Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997). 
In an accelerated appeal, the notice of appeal must be filed within twenty days after the
judgment is signed. Tex. R. App. P. 26.1(b). In this case, the notice of appeal was
untimely, and it therefore appeared we had no jurisdiction over the appeal. Accordingly,
we contacted Starks by letter, informing her there was a problem with the perfection of the
appeal and directing her to respond within ten days to show this Court why the appeal
should not be dismissed for want of jurisdiction. She did not respond.
          We then discovered that Starks was represented by appointed counsel, and we sent
the same letter to her counsel, with an extended response date to October 6, 2003. As of
the date of this opinion, we have received no communication from any source in
connection with this appeal. We therefore have no choice but to dismiss the appeal for
want of jurisdiction.
          We dismiss the appeal.
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 29, 2003
Date Decided:         October 30, 2003

n't know? You can't remember?

 

 A Unh-unh.

Later, still during direct examination of L.B., Phillips again raised the idea that any touching
may have resulted from playing together:

 Q [by counsel for Phillips] And were you playing with him?

 

 A [L.B] Yes.

 

 Q Do you remember how you were playing with him? What were
you playing.

 

 A First we was [sic] playing cards. Then, house.

 

 Q How did you play house?

 

 A I forgot.

 

 Q Okay. At any time did he ever--do you remember not
necessarily that day, if you can't remember, on any other days did he like to
tickle you?

 A No.

 

 Q Or wrestle with you?

 

 A No.

 

 Q No, you can't remember, or no, he didn't?

 

 A Unh-unh.

L.B.'s responses to defense counsel's multifarious questioning do not consistently show
which portion of the question she is answering, making her testimony understandably
unclear. Nevertheless, through this direct examination, and elsewhere in the record,
Phillips suggested that he lacked the requisite intent to commit the offense, even if he did
touch L.B.

 We see analogous facts in Brown v. State, 96 S.W.3d 508 (Tex. App.--Austin 2002,
no pet.). In that case, the State presented three witnesses who described similar
encounters with Brown. Brown, 96 S.W.3d at 513. On all occasions, Brown had picked
up the women in similar neighborhoods, taken them to remote areas, sexually assaulted
them, and left them stranded with little or no clothing. Id. There were also similarities in
the women's lifestyles, such as histories of drug abuse and crime, to suggest they were
specifically selected as victims. Id. Although the court acknowledged there were
dissimilarities between the charged and extraneous offenses with respect to the location
of the assault and the nature of the sexual act, those differences did not significantly lessen
the relevance of the extraneous acts with respect to the issue of Brown's culpable mental
state. Id. The trial court could have reasonably concluded that the testimony tended to
make the existence of Brown's guilty intent more likely than it otherwise would have been. 
Id.

 The Austin court explained the rationale:

 When the defendant's intent to commit the offense charged is at
issue, the relevance of an extraneous offense derives from the doctrine of
chances-the instinctive recognition of that logical process which eliminates
the element of innocent intent by multiplying instances of the same result
until it is perceived that this element cannot explain them all.

Id. at 512 (citing Cantrell v. State, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987); Wiggins v.
State, 778 S.W.2d 877, 885 (Tex. App.--Dallas 1989, pet. ref'd)).

 Here, the fact that Phillips suggested he was only wrestling with or tickling L.B.
brings into issue his intent. The evidence of prior instances of sexual conduct with
children, then, becomes relevant. The trial court did not abuse its discretion by admitting
the evidence of prior acts of sexual misconduct with other children. 

 2. Defensive Theory of Retaliation by Mother

 Through cross-examination of the State's witnesses, Phillips also advanced his
theory that L.B. fabricated the allegations against him at the urging of her mother, Diane. (4) 
Phillips suggested that Diane was angry at him and encouraged L.B. to make false
allegations against him in retaliation. Diane denied that she encouraged L.B. to make
these allegations. 

 The Tyler Court of Appeals visited this issue in Matthews v. State, 152 S.W.3d 723,
731 (Tex. App.--Tyler 2004, no pet.). There, Matthews appealed his convictions for one
count of aggravated sexual assault of a child and ten counts of indecency with a child. The
underlying defensive theory in the case was that 

 the allegations against him were concocted to extort the proceeds of an
insurance check from him, or otherwise, as a result of lack of parental
attention, anger, resentment, or general exposure to familial dysfunction. 

Id. The Tyler court concluded the trial court properly refused to sever the various charges
against Matthews because, even if the cases were tried separately, it is probable the
testimony of the other victims would have been admissible to refute the defensive theory
that the complainants concocted the story for a specific purpose. See id.; Salazar v. State,
127 S.W.3d 355, 365 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd); Castoreno v.
State, 932 S.W.2d 597, 600 (Tex. App.--San Antonio 1996, pet. ref'd).

 Here, similarly, the extraneous acts against the other children are relevant to rebut
the defensive theory that L.B. fabricated the allegations to satisfy her mother's desire for
retaliation against Phillips. (5) Such relevance serves as an alternative basis for the trial
court's admission of the evidence.

 3. Defensive Theory of Mother as Sexual Deviant

 Phillips also suggested that Diane, L.B.'s mother, was the sexual predator and used
L.B. as a lure. In opening arguments and during cross-examination, defense counsel
emphasized that Diane created a pattern of these allegations and that L.B. was forced to
live in an overtly sexual environment. Through hypothetical questions posed during cross-examination of the State's licensed sex offender therapist, and the therapist's qualified
answers to those questions, Phillips intimated that Diane used these allegations as a
"vicious" means of getting rid of Phillips as her lover after she used L.B. to attract him. 

 While Diane generally denied that she urged L.B. to fabricate the allegations against
Phillips, the State was permitted to rely on evidence of prior sexual misconduct by Phillips
to rebut the specific theory that Diane was the sexual predator and that these allegations
stemmed from her own deviant sexual behavior. The testimony of Payne and Hensley also
served to rebut this defensive theory and, therefore, was properly admitted.

 D. Rule 403

 Evidence admitted as relevant under Rule 404(b) may nonetheless be excluded
under Rule 403 if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403; Mozon v. State,
991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). Evidence is unfairly prejudicial when it
has an undue tendency to suggest that a decision be made on an improper basis,
commonly, but not necessarily, an emotional one. Mozon, 991 S.W.2d at 847 n.7. 

 In conducting a Rule 403 balancing test, a trial court should consider the following
factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress
the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs
to develop the evidence; and (4) the proponent's need for the evidence. Wyatt v. State,
23 S.W.3d 18, 26 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals has held
that the balancing test under Rule 403 weighs in favor of the admission of relevant
evidence and carries a presumption that relevant evidence will be more probative than
prejudicial. See Rayford v. State, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); Williams
v. State, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). With these principles in mind, we
now examine the admissibility of the evidence at issue here under Rule 403. 

 1. Probative Value

 Regarding the first factor, and as discussed earlier in our Rule 404(b) analysis,
evidence of the extraneous offenses was probative to rebut the defensive theories that the
allegations were fabricated at the urging of Diane. See Powell v. State, 63 S.W.3d 435,
438 (Tex. Crim. App. 2001) (concluding State may offer evidence of extraneous offense
to rebut defense of "lack of opportunity"); Waddell v. State, 873 S.W.2d 130, 136 (Tex.
App.--Beaumont 1994, pet. ref'd) (concluding extraneous acts were logical and necessary
rebuttal of defensive theory of fabrication). Additionally, the evidence undermined the
defensive theory that Phillips touched L.B. while Phillips tickled or wrestled with her. 

 2. Potential Impact on Jury

 As to the second factor, we find the extraneous offense evidence has the potential
to impress the jury in some irrational, yet indelible way. Evidence that Phillips sexually
assaulted his own son and two young stepdaughters could likely have an emotional impact
on a jury. The fact that the evidence, too, demonstrates that Phillips has been a continuing
offender for years would also likely impact the jury. This factor lends itself to exclusion of
the evidence.

 3. Time Necessary for Development

 The third factor weighs in favor of the State. Payne's direct testimony consisted of
approximately five pages of the six-volume reporter's record. Similarly, Hensley's direct
examination took approximately six pages of the reporter's record. Phillips conducted only
very limited cross-examination of Payne and did not cross-examine Hensley. The limited
time needed to develop the testimony of the two sisters lends itself to the admission of the
evidence.

 4. Need for Evidence

 The fourth factor also weighs in favor of the State. The State presented no other
witnesses to dispute the suggestion that Phillips inadvertently touched L.B. as the two
played together or that L.B.'s mother had encouraged L.B. to fabricate the allegations. We
point out that the State chose not to call L.B. as a witness, that Phillips did so, and that
L.B.'s testimony, even if read to favor the State's allegations, is confusing and disjointed. 
With only the reluctant and, perhaps, confused testimony from L.B. on which to rely as
rebuttal, the State's need for the evidence of prior acts was rather high. 

 Based on our evaluation of the factors to consider with respect to Rule 403, we
conclude the trial court did not abuse its discretion in concluding that the danger of unfair
prejudice did not substantially outweigh the probative value of this evidence. We overrule
this contention.

III. JURY ARGUMENT

 A. The Argument at Issue

 Phillips complains that, in its argument to the jury at the end of the guilt/innocence
stage, the State improperly referred to past and present sexual abuse victims. He also
contends there was error in the State's argument at the punishment phase when it referred
to Payne and Hensley's brother as a nontestifying victim of abuse, and when it referred to
selling drugs. 

 B. Preservation of Error

 Rule 33.1 of the Rules of Appellate Procedure dictates that an appellant make a
timely objection, stating the specific grounds for the ruling sought, and receive a ruling from
the trial court on that objection in order to preserve error for appellate review. See Tex. R.
App. P. 33.1. We point out that even constitutional errors, such as due process complaints,
are waived if not raised first in the trial court. See Jimenez v. State, 32 S.W.3d 233, 235
(Tex. Crim. App. 2000). To preserve jury argument error in a criminal case, a defendant
must (1) object to the argument, (2) if the objection is sustained, move for an instruction
to disregard, and (3) if the instruction is given, move for a mistrial. Cook v. State, 858
S.W.2d 467, 473 (Tex. Crim. App. 1993). Here, Phillips did not object to any of the State's
arguments of which he now complains. He, therefore, did not preserve his contention
regarding improper jury argument for our review. We overrule this point of error.

IV. IMPROPER TESTIMONY BY PAYNE

 Phillips also complains that the following exchange between the State and its
witness, Payne, violated the trial court's order granting his motion in limine:

 Q [By the State] Were you the only one this was happening to?

 

 [Counsel for Phillips]: Objection. It would be
hearsay unless she has some direct testimony.

 

 THE COURT: I'll sustain the objection.

 

 Q [By the State] And you have a brother, is that right, that's
younger than you?

 

 A [Witness Payne] Yes.

 

 Q And a sister that's older, and your sister is here to testify today? 
Is that right?

 

 A Yes.

 

 Q And your brother, where is he now?

 A He is in Charlottesville.

 

 Q . . . and how does he get on with his life now?

 

 A He's doing okay. He has three kids of his own, and he is--he
chose to put it out of his mind, and he said he wasn't strong enough to do
anything about it.

 Q Didn't feel strong enough to come here and testify?

 

 A Right.

 

 Q Okay.

 

 A He was only a baby when it started. He was a year old when
mom . . .

 

 [Counsel for Phillips]: Objection. This is hearsay.

 THE COURT: All right.

 Phillips complains that the preceding exchange "injected new and harmful facts that
were not cured by the Court's instruction." We note, however, that the trial court did
sustain defense counsel's first hearsay objection and that counsel failed to obtain a
definitive ruling on his second hearsay objection. Further, Phillips did not request an
instruction to disregard the testimony; nor did the trial court issue such an instruction on
its own initiative. The trial court granted Phillips the relief he requested and did not make
an adverse ruling from which Phillips can appeal.

V. CONCLUSION

 Because the testimony from Payne and Hensley detailing prior abuse by Phillips
was probative of the challenged issue of intent, and because such testimony also served
to rebut at least two defensive theories urged by Phillips, the trial court properly admitted
the testimony. Considering the probative value of this evidence, the short amount of time
to develop the testimony, and the State's need for this evidence, the trial court properly
concluded that the testimony's probative value was not substantially outweighed by its
prejudicial effect. Phillips failed to preserve error with respect to his contentions of
improper jury argument. The trial court granted Phillips the relief he requested regarding
specified testimony from Payne. 

 Accordingly, we overrule Phillips' contentions of error and affirm the judgment.

 Donald R. Ross

 Justice

Date Submitted: August 29, 2006

Date Decided: December 14, 2006

Do Not Publish
1. A person commits aggravated sexual assault if he or she "intentionally and
knowingly causes the penetration of the anus or sexual organ of a child by any means" and
"the victim is younger than 14 years of age." Tex. Penal Code Ann. 22.021(a)(1)(B),
(2)(B) (Vernon Supp. 2006).
2. Durst testified in the punishment phase of trial. Therefore, Article 37.07 applied to
the admission of his testimony and, in pertinent part, provides for the admission of "any
matter the court deems relevant to sentencing." See Tex. Code Crim. Proc. Ann. art.
37.07, 3(a)(1) (Vernon 2006); Enlow v. State, 46 S.W.3d 340, 343 n.1 (Tex.
App.--Texarkana 2001, pet. ref'd). This includes, but is not limited to: (1) the prior criminal
record of the defendant; (2) the defendant's general reputation; (3) the defendant's
character; (4) an opinion regarding the defendant's character; (5) the circumstances of the
offense being tried; and (6) notwithstanding Texas Rules of Evidence 404 and 405, any
other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt
by evidence to have been committed by the defendant or for which the defendant could be
held criminally responsible, regardless of whether the defendant has previously been
charged with or finally convicted of the crime or act. See Tex. Code Crim. Proc. Ann. art.
37.07, 3(a)(1).

 Phillips did not raise the issue of admission in terms of Article 37.07 in his motion
to suppress. Nor did he object at trial to Durst's testimony during the punishment phase. 
Likewise, Phillips did not brief the Article 37.07 issue to this Court. Because we conclude
Phillips did not preserve error with respect to the admission of Durst's testimony at
punishment, and because the inquiry under Rule 404 is specifically deemed irrelevant to
the inquiry under Article 37.07, we need not address the admissibility of Durst's testimony
during the punishment phase of trial. See Tex. R. App. P. 33.1.
3. The motion to suppress preserved error as to the admission of the evidence on
these grounds. See Garza v. State, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004) (holding
that "[w]hen a court overrules a pretrial motion to suppress evidence, the defendant need
not subsequently object to the admission of the same evidence at trial to preserve error")
(citing Ebarb v. State, 598 S.W.2d 842 (Tex. Crim. App. 1980)).
4. In his brief, Phillips emphasizes the length of time that had passed since the
alleged prior misconduct. We first point out that there is no per se rule regarding when an
offense is too remote in time to be introduced into evidence. See Templin v. State, 711
S.W.2d 30, 34 (Tex. Crim. App. 1986); Corley v. State, 987 S.W.2d 615, 620 (Tex.
App.--Austin 1999, no pet.). But see Bachhofer v. State, 633 S.W.2d 869, 872 (Tex. Crim.
App. [Panel Op.] 1982) (holding an extraneous offense committed four years and four
months before instant offense too remote); Robledo v. State, 480 S.W.2d 401 (Tex. Crim.
App. 1972) (holding prior conviction for nearly identical offense which occurred four years
and three months too remote to be probative of intent). While remoteness is a factor
regarding the admission of the evidence, it is not a chief factor and must be considered
among all other relevant factors. See Templin, 711 S.W.2d at 34; Corley, 987 S.W.2d at
620-21. 

 The Texas Court of Criminal Appeals has effectively limited the application of
Robledo to instances where only intent is at issue. See Templin, 711 S.W.2d at 34 & n.2. 
Here, Phillips challenges not only intent, but also advances specific defensive theories that
might explain L.B.'s allegations. Further, as sister courts have pointed out, the holdings
in Bachhofer and Robledo came under common-law principles "which tended to favor
exclusion of evidence." See Corley, 987 S.W.2d at 621 (citing Montgomery v. State, 810
S.W.2d 372, 375 (Tex. Crim. App. 1990)); see also Prince v. State, 192 S.W.3d 49, 55
(Tex. App.--Houston [14th Dist.] 2006, pet. ref'd); Lavarry v. State, 936 S.W.2d 690, 695
(Tex. App.--Dallas 1996, pet. dism'd).
5. We recognize that the mere challenge to the credibility of the complainant through
argument or cross-examination does not open the door to extraneous offenses. However,
because the defensive issues here go beyond a mere challenge and into motivations and
alternative theories, we distinguish these circumstances from those in which a defendant
merely challenges the credibility of a complainant. See DeLeon v. State, 77 S.W.3d 300,
314 (Tex. App.--Austin 2001, pet. ref'd). Rather than simply questioning L.B.'s ability or
motivation to tell the truth, Phillips specifically suggested that Diane emotionally
manipulated her developmentally-challenged daughter into making allegations against
Phillips as either retaliation or as a part of the mother's scheme to use her daughter as a
lure in Diane's own sexual deviance.