**Opinion filed November 30, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00222-CR

_____

## RONNIE JACKSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR28209**

## M E M O R A N D U M   O P I N I O N

Appellant, Ronnie Jackson, was indicted for the offense of attempted aggravated kidnapping, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 15.01, 20.04 (West 2019). After a bench trial, Appellant was convicted and sentenced to twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

In eight issues, Appellant challenges the trial court's evidentiary rulings under Rules 401, 403, and 404(b) of the Texas Rules of Evidence. Specifically, Appellant asserts that the trial court abused its discretion when it admitted evidence of his 2000 and 2013 indecent-exposure offenses, and the testimony of: (1) Frances Diaz, who testified that Appellant was looking at other young girls besides the victim while in Hobby Lobby; (2) David McNeal, who identified Appellant to police, and told the trial court that Appellant asked about the consequences of human trafficking; (3) Isidro Laureles, who testified that Appellant showed him a disturbing video; (4) N.B., the victim of Appellant's 2013 indecent-exposure offense; (5) J.W., the victim of Appellant's 2000 indecent-exposure offense, along with the two responding officers; (6) Stormy Raines, who saw Appellant masturbating in public in 2019; and (7) Christy Mares, who testified that Appellant followed her and her daughter in another store some time in 2020. We affirm.

## I. *Factual Background*

On September 15, 2020, around 7:00 p.m., Isis Ruiz-Vargas and her four-year-old daughter, L.R.,[1] were in Hobby Lobby in Early, Texas. Appellant, who had been in Hobby Lobby since 6:25 p.m., followed Ruiz-Vargas and L.R. throughout the store. Appellant made Ruiz-Vargas feel uncomfortable as he passed her and L.R. multiple times.

Ruiz-Vargas took L.R. to look at dolls and dollhouses before they left. As they began to walk to the checkout line, L.R. ran to the Christmas decorations. Ruiz-Vargas saw Appellant, who was standing by the Christmas ornaments, "sway his arms" at L.R. like he was trying to "scoop her in." After Appellant lunged for L.R., getting "[w]ithin inches" of her, Ruiz-Vargas grabbed L.R. and went to find help.

---

[1]A pseudonym is used for the child victim throughout the opinion to protect the child's identity. *See, e.g.*, TEX. R. APP. P. 9.10(a)(3). The adult victims are also identified by pseudonyms in this opinion.

The first Hobby Lobby employee that Ruiz-Vargas alerted was Cason Taylor, who testified that Ruiz-Vargas "looked like she was scared." Ruiz-Vargas told Taylor, "'[s]omebody tried to take my daughter from me,'" and identified Appellant as he "made a bee line for the door." Taylor described Appellant's clothing, including his distinct "boonie hat." Ruiz-Vargas and other witnesses called Appellant's hat a "fisherman hat" or "safari hat."

The Early Police Department posted still photographs on Facebook from Hobby Lobby's surveillance video footage seeking information about Appellant's identity. David McNeal recognized Appellant as his former employee and called the police. McNeal identified Appellant and reported that "maybe a week before" September 15, Appellant told him that he suspected an acquaintance was engaged in trafficking and kidnapping people. Appellant then asked McNeal: "What do you think would happen if someone was [sic] to be doing that? What would their punishment be?" McNeal wondered why anyone would ask that question and said "it struck a nerve."

Appellant was ultimately apprehended and charged with attempted aggravated kidnapping. *See* Penal §§ 15.01, 20.04. Appellant waived his right to a jury trial and his trial proceeded before the trial court.

At trial, the State presented eighteen witnesses, including Ruiz-Vargas, and several Hobby Lobby employees. Frances Diaz was working as an assistant manager and the head of the floral department on September 15, 2020. She saw Appellant in the floral department "for an extended amount of time where he appeared to be looking at . . . little girls." Diaz testified that Appellant was acting "creepy" and she was concerned that he was "a predator." According to Diaz, Appellant was looking at "at least four" people, including two teenagers, and a mother and daughter.

3

Isidro Laureles is Appellant's ex-girlfriend's twenty-one-year-old son who moved in with his mother and Appellant in July or August of 2020. Laureles testified that Appellant showed him a "gruesome and terrifying" video, but did not provide the details of the video's contents.

The trial court admitted into evidence the order of deferred adjudication community supervision for Appellant's indecent-exposure offense that Appellant committed on October 17, 2013 in Odessa, and permitted the victim (N.B.) and the handling police officers to testify about the circumstances of this offense. N.B. told the trial court that she was in Wal-Mart in Odessa with her two-year-old daughter when she sensed that Appellant was close behind her. She left the area because she was afraid, but Appellant followed her. N.B. testified that Appellant exposed his erect penis "several times," and "was directing it to [her] daughter." She went to the front of the store and called the police; Appellant was later arrested.

The State also called J.W. and two officers with the Garland Police Department. On December 21, 2000, J.W. was Christmas shopping in K-Mart in Garland. She first noticed Appellant when she walked into the store, and "became more alert" by the third time she saw him near her. J.W. left the men's slippers area because Appellant made her feel uncomfortable. The next time she saw him was in the card aisle, where he exposed his penis to her and began touching himself. Police responded, confirmed Appellant's identity, and arrested him for indecent exposure.

The trial court also admitted evidence that on August 28, 2019, Appellant entered a Factory Connection store near Hobby Lobby in Early, the same store where he later attempted to abduct L.R. Appellant asked Stormy Raines, a Factory Connection employee, about buying something for his wife. Appellant spent over thirty minutes in the store "being awkward," so Raines began watching him on the store's security camera. She testified that when she realized Appellant was masturbating she texted her boss; police arrived after Appellant had left the store.

4

Finally, Christy Mares testified that sometime in 2020, Appellant followed her and her eleven-year-old daughter in the Big Lots store in Brownwood. He made Mares feel uncomfortable when he made eye contact with her; Mares and her daughter then left the store. Appellant was wearing his fisherman hat at the time, which caught Mares's attention when she saw Hobby Lobby's surveillance photographs on Facebook.

The trial court found Appellant guilty of the indicted offense and sentenced him to twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. *Discussion*

In eight issues, Appellant contends that the trial court abused its discretion when it admitted irrelevant and unfairly prejudicial evidence of Appellant's extraneous offenses or bad acts. *See* TEX. R. EVID. 401, 403, 404.

To convict Appellant of the charged offense, the State was required to prove beyond a reasonable doubt that Appellant attempted to abduct L.R. with the intent to: (1) hold her for ransom or reward; (2) use her as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on her or violate or abuse her sexually; (5) terrorize her or a third person; or (6) interfere with the performance of any governmental or political function. PENAL § 20.04(a). In addition, Appellant's attempted aggravated-kidnapping conviction required a showing that he had the specific intent to commit the offense and did "an act amounting to more than mere preparation that tend[ed] but fail[ed] to effect the commission of the offense intended." *Id.* at § 15.01(a).

### A. *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). This standard also applies to a trial court's decision to admit or exclude extraneous-

5

offense evidence. *Perkins v. State*, 664 S.W.3d 209, 216–17 (Tex. Crim. App. 2022); *Arevalo v. State*, 675 S.W.3d 833, 843 (Tex. App.—Eastland 2023, no pet.). The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Further, we will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).

B. *Applicable Law*

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 402). "Evidence is relevant if it tends to make a fact 'of consequence in determining the action' more or less probable than it would be otherwise." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (citing TEX. R. EVID. 401).

Evidence of a crime, wrong, or act other than the charged offense is not admissible to prove that the defendant acted in conformity with his character; however, this evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to prove character conformity. TEX. R. EVID. 404(b)(1); *Perkins*, 664 S.W.3d at 216; *Inthalangsy*, 634 S.W.3d at 756. Such evidence may be admissible to show a defendant's culpable mental state, intent, opportunity, motive, preparation, plan, knowledge, or the absence of mistake or accident. TEX. R. EVID. 404(b)(2); *Arevalo*, 675 S.W.3d at 848. Thus, although Rule 404(b) generally precludes the admission of character-conformity evidence, it does not necessarily prohibit the admission of such evidence if it is offered to establish some other purpose. *See De La Paz v. State*, 279 S.W.3d 336, 342–43 (Tex. Crim. App. 2009).

Additionally, extraneous-offense evidence may be admitted to "illustrat[e] other aspects of an indivisible criminal transaction, also known as same-transaction contextual evidence." *Inthalangsy*, 634 S.W.3d at 756 (internal quotation marks omitted). "Same-transaction contextual evidence 'illuminate[s] the nature [and context] of the crime alleged.'" *Id.* (quoting *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)). A factfinder "is entitled to know all the facts that are 'blended or closely interwoven' with a continuous criminal episode." *Id.*; *Screws v. State*, 630 S.W.3d 158, 167–68 (Tex. App.—Eastland 2020, no pet.). Such evidence must be necessary to the trier of fact's understanding of the offense, such that the charged offense would make little sense without the same-transaction evidence. *Inthalangsy*, 634 S.W.3d at 756.

Rule 403 of the Texas Rules of Evidence provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. So even if a trial court determines that evidence is relevant and admissible for a non-conformity purpose, Rule 403 may still preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *Perkins*, 664 S.W.3d at 216. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hall v. State*, 663 S.W.3d 15, 34 (Tex. Crim. App. 2021); *Arevalo*, 675 S.W.3d at 851. When conducting a Rule 403 analysis, a trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a

jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hall*, 663 S.W.3d at 32 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)); *Roe v. State*, 660 S.W.3d 775, 784 (Tex. App.—Eastland 2023, pet. ref'd.).

Appellant challenges Diaz's testimony under Rules 401 and 404(b), McNeal's testimony under Rule 403, the testimony of Laureles, N.B., Raines, and Mares under Rules 403 and 404(b), and the admission of Appellant's 2000 and 2013 indecent-exposure offenses. We address the testimony of each witness and Appellant's corresponding evidentiary challenge in turn.

### 1. *Frances Diaz's Testimony: Rules 401 & 404(b)*

Appellant complains in his first issue that the trial court erroneously permitted Diaz to testify that she saw Appellant, on the day of the offense, in the floral department of Hobby Lobby looking at young girls. The trial court correctly determined that Diaz's testimony was relevant, and part of the same criminal transaction as the attempted aggravated kidnapping for which Appellant was being tried.

Other crimes, wrongs, or acts are considered same-transaction contextual evidence when several crimes are so intermixed or connected with one another that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (internal quotation marks omitted). Such evidence is admissible "only to the extent that it is necessary to the [factfinder]'s understanding of the offense." *Id.*

Diaz's testimony that Appellant was looking at young girls in a creepy way, like "a predator," was relevant to show Appellant's intent to violate or abuse L.R.

8

sexually after he lunged for her. *See Casey v. State*, 215 S.W.3d 870, 880–81 (Tex. Crim. App. 2007). This was also the beginning of a continuing transaction that ended with Appellant's unsuccessful attempt to abduct a four-year-old girl before rushing out of the store. *See* PENAL §§ 15.01, 20.04(a)(4); *Inthalangsy*, 634 S.W.3d at 756; *Devoe*, 354 S.W.3d at 470. Therefore, this evidence was not only relevant to show Appellant's intent, it was also admissible as same-transaction contextual evidence. Accordingly, Appellant's first issue is overruled.

### 2. *David McNeal's Testimony: Rule 403*

Appellant asserts in his second issue that the trial court erred when it admitted McNeal's testimony that Appellant asked him what a person's punishment would be for trafficking and kidnapping people. Because the trial court's decision to admit this evidence was within the zone of reasonable disagreement, we overrule Appellant's second issue.

In conducting a Rule 403 analysis, the first two *Gigliobianco* factors focus on the probative value of the proffered evidence. "Probative value" refers to: (1) how strongly an item of evidence serves to make more or less probable the existence of a fact of consequence to the litigation, (2) coupled with the proponent's need for that item of evidence. *Gigliobianco*, 210 S.W.3d at 641. First, Appellant's curiosity about the consequences of "trafficking and kidnapping people" is relevant to show what Appellant intended to do with or to L.R. had he successfully abducted her. *See* PENAL § 20.04(a)(1)–(6). Second, with respect for the State's need for the evidence, the State's only eyewitness to testify about this incident was Ruiz-Vargas. She saw Appellant reach for L.R. as if he were trying to "scoop her in." However, the State was still required to prove that Appellant specifically intended to abduct L.R. with the intent to commit one of the six aggravating factors listed in Section 20.04. *See* PENAL § 20.04(a)(1)–(6).

Intent is critical in determining whether a person committed aggravated kidnapping, and even more so when the charged offense is attempted aggravated kidnapping. The State's evidence of Appellant's requisite intent consisted of Appellant's statement a week prior to the offense when he asked about the consequences of kidnapping, his 2000 and 2013 indecent-exposure offenses, testimony that he followed women and their young daughters in various stores, and his public masturbation in 2019. This evidence, including his curiosity about the punishment for kidnapping and human trafficking a week before the offense, was relevant to show his intent to abuse L.R. or violate her sexually, which accompanied his attempt to abduct her. *See Gigliobianco*, 210 S.W.3d at 641. Thus, the first two factors weigh in favor of the admission of this evidence. *See id.*

The final four *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor addresses the tendency of the evidence to suggest a decision on an improper basis. *Id.* Indeed, evidence of a sexual nature that involves children is inherently inflammatory and prejudicial. *Roe*, 660 S.W.3d at 785. All the evidence of which Appellant complains is undoubtedly inflammatory, given its graphic, predatorial, or sexual nature. However, Rule 403 only protects a criminal defendant against *unfair* prejudice, not all prejudice. *Ruiz v. State*, 631 S.W.3d 841, 865 (Tex. App.—Eastland 2021, pet. ref'd).

Irrespective of Appellant's claim of prejudice, Appellant's statement to McNeal is highly probative of Appellant's preparation, common scheme or plan, or motive to abduct L.R. with the intent to inflict bodily injury on her or to violate or abuse her sexually. *See* PENAL § 20.04(a)(4); *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005) ("the 'plan' exception allows admission of evidence to show steps taken by the defendant in preparation for the charged offense").

Consequently, we cannot say that the trial court abused its discretion when it admitted this evidence. Moreover, any prejudicial effect of the admitted evidence is

10

mitigated here because the trial was to the trial court. *See Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.) ("[W]hen a case is tried to a trial court rather than to a jury, the danger that the trier of fact will consider extraneous offense evidence for anything other than the limited purpose for which it is admitted is reduced, and the likelihood that the extraneous evidence will unfairly prejudice the defendant is diminished."). The trial court explicitly admitted the contested evidence to consider it only for the limited purposes of "intent, motive, lack of mistake, and the other exceptions . . . under 404(b)." We presume that the trial court, as the trier of fact, followed its own limiting instruction. *See Roe*, 660 S.W.3d at 785.

We conclude that the probative value of McNeal's testimony was not substantially outweighed by the danger of unfair prejudice, and any prejudicial effect of the evidence beyond its limited purposes for admissibility were minimal.

### 3. *Isidro Laureles's Testimony: Rules 403 & 404(b)*

Appellant argues in his third issue that the trial court erroneously admitted Laureles's testimony in violation of Rules 403 and 404(b). The State purportedly offered this testimony to show Appellant's intrigue in causing bodily injury to others, and the trial court agreed to consider it only for the limited purpose of showing Appellant's intent.

In assessing whether evidence of "other crimes, wrongs, or acts" was properly admitted, we generally consider the initial proffer in addition to what was admitted at trial. *Fischer v. State*, 268 S.W.3d 552, 557–58 (Tex. Crim. App. 2008). Here, however, Appellant failed to renew his objection to the proffered evidence after Laureles's testimony failed to match the extent of the State's proffer. Trial courts are limited to the information available at the time they make their evidentiary rulings and they must be given "an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been

11

made." *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002) (discussing TEX. R. APP. P. 33.1); s*ee State v. Heath*, 642 S.W.3d 591, 597 (Tex. App.—Waco 2022, pet. granted) (finding no abuse of discretion based on the information the trial court "had before it at the time of its ruling"). We thus consider whether the trial court abused its discretion when it permitted Laureles to testify based on the State's proffer.

Prior to questioning Laureles, the State advised the trial court that Laureles would testify that he observed Appellant watching a video showing a human being dismembered, and he noticed that Appellant appeared to be interested in the video's contents rather than being disturbed by it. Laureles would also purportedly testify that he believed Appellant found the video on "the dark web," which indicates it depicted an actual human being dismembered rather than actors using special effects. The trial court determined that simply discussing Appellant watching the video is "a stretch," but could be relevant to the aggravating factors the State was required to prove.

We cannot say the trial court abused its discretion when it permitted Laureles to discuss the mere fact that Appellant watched a disturbing video and later showed it to him. After Appellant's trial counsel objected, the trial court explained, "if this was a regular kidnapping and not aggravated, then I wouldn't find any relevance to it . . . [b]ut the aggravated aspect, they have to show that additional element." The trial court found that Laureles's testimony on this point created only a "limited prejudicial effect" because the State did not intend to show the actual video and the trial court stated that it would only consider the testimony "for purposes of intent."

Based on the State's submission, the trial court had enough information to determine, within the zone of reasonable disagreement, that the evidence was relevant to a material, non-propensity issue—Appellant's intent and motive to kidnap L.R. *See Roe*, 660 S.W.3d at 784. Had Laureles testified that the video

12

depicted human dismemberment, and that Appellant was intrigued by it, such evidence would have been probative of Appellant's intent to inflict bodily harm on L.R. after abducting her. *See* PENAL § 20.04(a)(4).

We further conclude, after balancing the *Gigliobianco* factors, that the trial court did not abuse its discretion when it found that the probative value of Laureles's testimony was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641. Proof of intent in this case, as in most cases, required evidence of Appellant's words and actions leading up to the attempted abduction. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) ("We cannot read an accused's mind, and absent a confession, we must infer his mental state from his acts, words and conduct.") (internal quotation marks omitted)). Thus, Appellant's intrigue with a disturbing, purportedly real video of human mutilation is indeed relevant to show what Appellant intended to do to L.R. had he successfully abducted her. *See* PENAL § 20.04(a)(1)–(6).

As for the potential negative effects of the proffered evidence, Laureles's testimony regarding the video itself was "not particularly probative or prejudicial." *See Battaglia v. State*, 537 S.W.3d 57, 62 (Tex. Crim. App. 2017) (citing *Battaglia v. State*, No. AP-74,348, 2005 WL 1208949, at *7 (Tex. Crim. App. May 18, 2005) (not designated for publication)). But, for the same reason, admission of the fact that Appellant watched a gruesome video was not *unfairly* prejudicial on the issue of Appellant's guilt. *Battaglia*, 2005 WL 1208949, at *7. Here, the danger of the trial court considering Laureles's testimony for an improper purpose, especially given its vagueness, was minimal. *See Gigliobianco*, 210 S.W.3d at 641. Accordingly, the trial court did not abuse its discretion when it admitted Laureles's testimony.

Nevertheless, even if we were to assume that the trial court erred when it admitted Laureles's testimony, any such error would have been harmless. A trial

13

court's erroneous admission of evidence that does not affect the defendant's substantial rights will be disregarded as non-constitutional error. TEX. R. APP. P. 44.2(b). A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in determining the factfinder's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).

In assessing the likelihood that the factfinder's verdict was adversely affected by the claimed error, we consider the following nonexclusive list of factors: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; (4) whether the State emphasized the complained-of error; (5) the trial court's instructions; (6) the theory of the case; and (7) relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023) (citing *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex. Crim. App. 2002); *Wishert v. State*, 654 S.W.3d 317, 332–33 (Tex. App.—Eastland 2022, pet. ref'd).

Applying the harm factors, we find that any error in the admission of evidence that Appellant watched a grisly video—the content of which was not revealed by the witness—had only a slight influence or effect, if any, on the trial court's verdict. *See Cook*, 665 S.W.3d at 599–600. Other admitted evidence also showed that Appellant (1) spent over an hour in Hobby Lobby watching young girls before attempting to abduct L.R., (2) had a history of following women and young children in stores, (3) publicly masturbated in a department store, (4) asked his former boss about the punishment for trafficking and kidnapping people, and (5) had an empty shed on his property in a rural area approximately ten minutes from the location of the offense.

Likewise, the State did not mention Appellant watching a gruesome video in its closing argument, it was not an issue in voir dire due to Appellant being tried by

14

the trial court, and the trial court is presumed to follow its instruction to consider this evidence solely for the purpose of Appellant's intent. *See Roe*, 660 S.W.3d at 785.

Given the minuscule likelihood that the trial court's verdict was adversely affected by the complained-of testimony, we find any alleged error was harmless. *See Cook*, 665 S.W.3d at 599–600. Accordingly, Appellant's third issue is overruled.

4. *Appellant's 2000 and 2013 Indecent Exposures: Rules 403 & 404(b)*

In Appellant's fourth issue, he argues that the trial court erroneously admitted, in violation of Rules 403 and 404(b), evidence of Appellant's 2013 indecent-exposure offense for which he was placed on deferred adjudication. Appellant contends in his fifth issue that the testimony of N.B.—the victim of his 2013 indecent exposure—violated Rules 403 and 404(b). In his sixth issue, citing the same evidentiary rules, Appellant argues that the trial court erred when it admitted testimony about Appellant's 2000 indecent-exposure offense.

As an initial matter, the State's burden for admitting evidence of extraneous offenses "is high: a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense." *Inthalangsy*, 634 S.W.3d at 757 (internal quotation marks omitted). Here, in addition to showing that Appellant was placed on deferred adjudication for his 2013 indecent-exposure offense, the victim of the offense and responding officers also testified about the circumstances of the offense. Based upon the testimony and evidence before the trial court, there was sufficient evidence such that a trier of fact could find beyond a reasonable doubt that Appellant committed this offense. *See id.*

Appellant's commissions of indecent exposure in 2000 and 2013 were relevant to intent, identity, and absence of mistake. In *Wishert v. State*, we upheld the admission of uncharged sexual assaults against children during the appellant's

trial for continuous sexual abuse of a child. 654 S.W.3d at 333–34. In doing so, we concluded that the appellant's prior sexual abuse of other children tended to "make a fact of consequence more probable," and "show [the appellant's] motive, opportunity, and intent to commit other, similar incidents of sexually abusive conduct for which [the appellant] was on trial." *Id.* at 333. Such is the case here.

Another rationale for admitting extraneous-offense evidence is to prove the identity of the offender. TEX. R. EVID. 404(b)(2); *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). The theory of relevancy to prove identity "is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a 'signature.'" *Segundo*, 270 S.W.3d at 88 (citing *Beets v. State*, 767 S.W.2d 711, 740–41 (Tex. Crim. App. 1988)). "No rigid rules dictate what constitutes sufficient similarities." *Id.* "[R]ather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id.* Even one unique characteristic may be a "signature." *Id.*

Encompassed within Rule 404(b)'s permissible purpose of *modus operandi* is the "doctrine of chances" theory to show lack of consent, motive, and the manner of committing an offense. *Casey*, 215 S.W.3d at 881. "[E]vidence of a remarkably similar act might be admissible to prove the *corpus delicti* (the crime itself), intent, or lack of consent under the 'doctrine of chances.'" *Id.* (quoting *Daggett v. State*, 187 S.W.3d 444, 452 n.18 (Tex. Crim. App. 2005)). "The admissibility of evidence under the doctrine of chances depends on a showing of 'highly unusual events [that] are unlikely to repeat themselves inadvertently or by happenstance.'" *Valadez v. State*, 663 S.W.3d 133, 141 (Tex. Crim. App. 2022) (quoting *De La Paz*, 279 S.W.3d at 347).

Here, after comparing the circumstances of each incident, we conclude that the trial court did not abuse its discretion when it admitted these prior offenses, given the similarities between the attempted aggravated kidnapping for which Appellant was on trial and his prior indecent-exposure offenses. All three offenses occurred in stores in which Appellant would follow his targets through aisles and departments. Each victim described how Appellant followed them throughout the store, causing them fear and discomfort each time he reappeared. Both Ruiz-Vargas and N.B. had their young daughters with them. All other dissimilarities between the offenses—the years that had passed between the commission of these crimes, the ages of the victims, and the severity of Appellant's ultimate conduct—are immaterial to Appellant's motive and intent to abduct L.R. for his sexual gratification. *Segundo*, 270 S.W.3d at 89–90.

Furthermore, under the "doctrine of chances," any plausible argument that Appellant was not following Ruiz-Vargas and her daughter with a sexually-motivated objective significantly "diminishes if the same scenario is repeated with other women on other occasions." *Casey*, 215 S.W.3d at 881. As such, the trial court did not abuse its discretion when it admitted evidence of Appellant's extraneous conduct.

With respect to Rule 403, because evidence of a prior sexual offense is especially probative of a defendant's propensity to commit another sexually-motivated offense, such as aggravated kidnapping with the intent to violate the victim sexually, the balancing analysis will not normally favor the exclusion of evidence of a defendant's prior sexual offenses. *See Wishert*, 654 S.W.3d at 333. As set forth above, the trial court correctly pointed out that intent was "a critical issue," and Appellant's prior offenses were highly probative of his motive and intent during the commission of the instant offense. The State's case could have been significantly weaker or more circumstantial without the admission of the details of

Appellant's indecent exposures, which supports the conclusion that the State's need for the evidence was high. *See Colone v. State*, 573 S.W.3d 249, 267 (Tex. Crim. App. 2019).

Appellant's 2013 and 2000 indecent-exposure offenses were admissible for the noncharacter-conformity purpose of showing Appellant's intent and *modus operandi* under the "doctrine of chances," and the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b); *Valadez*, 663 S.W.3d at 143. Because we conclude that the trial court did not abuse its discretion when it admitted this evidence, we overrule Appellant's fourth, fifth, and sixth issues.

5. *Stormy Raines's Testimony: Rules 403 & 404(b)*

In Appellant's seventh issue, he raises similar challenges under Rules 403 and 404(b) to Raines's testimony that Appellant masturbated in Factory Connection in 2019. We conclude that the trial court did not abuse its discretion when it found that Appellant's public masturbation was relevant to a noncharacter-conformity purpose, and that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b)(2); *Corley*, 987 S.W.2d at 621.

"[T]he prosecution may always offer evidence to show motive." *Colone*, 573 S.W.3d at 267 (internal quotation marks omitted). Because this incident was sexual in nature and had occurred a year before the attempted aggravated kidnapping of L.R. at a store in the same shopping center as the instant offense, the misconduct was relevant to show Appellant's intent, motive, plan, and absence of mistake. *See* TEX. R. EVID. 404(b)(2); *Colone*, 573 S.W.3d at 267; *De La Paz*, 279 S.W.3d at 347–48; *Johnston v. State*, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004). The evidence was also admissible for the noncharacter-conformity purpose of showing

Appellant's *modus operandi* under the "doctrine of chances." *See De La Paz*, 279 S.W.3d at 348.

The trial court's admission of this evidence under Rule 403 was likewise within the zone of reasonable disagreement. In addition to the inherent probative force to show Appellant's intent, motive, and lack of mistake or accident, the State needed evidence of Appellant's prior misconduct to prove the aggravating element in his attempted kidnapping of L.R. And, as with the trial court's previous rulings, it agreed to consider the evidence for its stated limited, permissible purposes, and we presume that it did. *Corley*, 987 S.W.2d at 621. Therefore, we conclude that there was minimal, if any, danger of the trial court as the trier of fact having considered this evidence for an improper purpose. *Gigliobianco*, 210 S.W.3d at 641; *Corley*, 987 S.W.2d at 621. Accordingly, Appellant's seventh issue is overruled.

### 6. *Christy Mares's Testimony: Rule 404(b)*

Finally, in Appellant's eighth issue, he raises challenges under Rules 403 and 404(b) to Mares's testimony that he followed her and her daughter in Big Lots in 2020. We note at the outset that Appellant did not make a Rule 403 objection to Mares's testimony. He only objected to the admission of this evidence under Rule 404(b).

To preserve a complaint for appellate review, the complaining party must present a specific, timely objection or motion to the trial court which states the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020). Further, the complaint and arguments raised on appeal must comport with and correspond to the objections made, if any, at trial or they are waived. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013,

19

no pet.). As such, an objection asserted at trial on one ground cannot support a different contention on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Arevalo*, 675 S.W.3d at 845. Because the complaint that Appellant advances on appeal does not comport with the objection he made at trial, Appellant has waived and failed to preserve his Rule 403 complaint for our review.

As to his contention that Mares's testimony violated Rule 404(b), we find no abuse of discretion in the trial court's admission of this evidence. Similar to the trial court admitting evidence of Appellant's other uncharged conduct, the trial court could have reasonably found distinctively consistent and similar patterns and characteristics between Appellant's encounter with Mares and the attempted aggravated kidnapping of L.R., such that they constituted a "signature." *See Segundo*, 270 S.W.3d at 88. Appellant was wearing the same style hat as he wore on September 15, 2020. He followed a Hispanic-looking woman and her young daughter in a store and made them feel uncomfortable. Both Ruiz-Vargas and Mares described feeling nervous or uncomfortable after making eye contact with Appellant. And, Ruiz-Vargas's unsafe feeling was not unique—the evidence showed that Appellant made numerous women feel uncomfortable by following them in other stores for the purpose of seeking sexual gratification.

Events leading up to the commission of an offense may provide evidence of "a backstory," or motive without violating Rules 403 and 404(b). *See Colone*, 573 S.W.3d at 266–68. This was the most recent incident that preceded Appellant's attempted aggravated kidnapping of L.R. When considered with the other admitted evidence, its probative force contributed to proving Appellant's scheme of following women and children in public then acting out sexually. Because we conclude that the trial court did not abuse its discretion when it admitted this evidence, Appellant's eighth issue is overruled.

## III.  *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


November 30, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.